**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIC FRITZ,<br><br>*Plaintiff,*<br>v.<br><br>THOMPSON GROUP, INC.,<br><br>THOMPSON LEXUS OF WILLOW GROVE,<br><br>THOMPSON LEXUS WILLOW GROVE,<br><br>THE THOMPSON GROUP,<br><br>THE THOMPSON GROUP, INC.,<br><br>THE THOMPSON ORGANIZATION,<br><br>THE THOMPSON ORGANIZATION, INC.,<br><br>*Defendants.* | Case No. <u>2:26-cv-06493</u><br><br>JURY TRIAL DEMANDED (8) |

**<u>COMPLAINT</u>**

## I. <u>THE PARTIES:</u>

1. Plaintiff, Eric Fritz, is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides at 129 Sunnyside Lane, Perkasie, PA 18944, in Bucks County, Pennsylvania.

2. Defendant, Thompson Group, Inc., was, at all times relevant hereto, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business and principal office located at 50 W. Swamp Road, Doylestown, PA 18901-2442, in Bucks County, Pennsylvania. Defendant, Thompson Group, Inc. has a registered office

address located in the Commonwealth of Pennsylvania at 122 W. Swamp Road, Doylestown, PA 18901, in Bucks County, Pennsylvania. Defendant, Thompson Group, Inc. owns and operates a Lexus dealership located at 2560 Maryland Road, Willow Grove, PA 19090. Defendant, Thompson Group, Inc., also owns and operates several other car dealerships including other Lexus, BMW, and Toyota dealerships throughout Bucks County, Pennsylvania.

3. Defendant, Thompson Lexus of Willow Grove, was, at all times relevant hereto, a corporation, partnership, limited liability company, business organization, or business entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business and principal office believed and averred to be located at 2560 Maryland Road, Willow Grove, PA 19090.

4. Defendant, Thompson Lexus Willow Grove, was, at all times relevant hereto, a corporation, partnership, limited liability company, business organization, or business entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business and principal office believed and averred to be located at 2560 Maryland Road, Willow Grove, PA 19090.

5. Defendant, The Thompson Group, was, at all times relevant hereto, a corporation, partnership, limited liability company, business organization, or business entity organized and existing under the laws of the Commonwealth of Pennsylvania, believed and, therefore, averred to operate the dealership located at 2560 Maryland Road, Willow Grove, PA 19090.

6. Defendant, The Thompson Group, Inc., was, at all times relevant hereto, a corporation, partnership, limited liability company, business organization, or business entity organized and existing under the laws of the Commonwealth of Pennsylvania, believed and,

therefore, averred to operate the dealership located at 2560 Maryland Road, Willow Grove, PA 19090.

7. Defendant, The Thompson Organization, was, at all times relevant hereto, a corporation, partnership, limited liability company, business organization, or business entity organized and existing under the laws of the Commonwealth of Pennsylvania, believed and, therefore, averred to operate the dealership located at 2560 Maryland Road, Willow Grove, PA 19090.

8. Defendant, The Thompson Organization, Inc., was, at all times relevant hereto, a corporation, partnership, limited liability company, business organization, or business entity organized and existing under the laws of the Commonwealth of Pennsylvania, believed and, therefore, averred to operate the dealership located at 2560 Maryland Road, Willow Grove, PA 19090.

## II. JURISDICTION & VENUE:

9. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

10. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims as those claims arise out of the same set of operative facts as the federal claims.

11. This Court has personal jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

12. Pursuant to 42 U.S.C. § 12117(a), the Americans with Disabilities Act ("ADA") incorporates Title VII's specific venue statute, codified at 42 U.S.C. § 2000e-5(f)(3), into the ADA. *See* 42 U.S.C. § 12117(a). More specifically, 42 U.S.C. § 12117(a) of the ADA provides, in pertinent part, that, "The powers, remedies, and procedures set forth in section[] … 2000e-5 … of this title shall be the powers, remedies, and procedures this subchapter provides … to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment." 42 U.S.C. § 12117(a). Further, venue is proper under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice is "alleged to have been committed" in this judicial district, "the employment records relevant to such practice are maintained and administered" in this judicial district, and Plaintiff "would have worked" in this judicial district "but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3).

13. Alternatively, Under 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because Defendants are deemed to reside in this judicial district. *See* 28 U.S.C. §§ 1391(b)(1), 1391(c)(2).

14. Defendants are deemed to reside in this judicial district pursuant to 28 U.S.C. § 1391(c)(2), which provides, in pertinent part:

> (c) Residency.—For all venue purposes—
>
> …
>
> > (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question … .

28 U.S.C. § 1391(c)(2).

15. Alternatively, under 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. 28 U.S.C. § 1391(b)(2).

16. At all times relevant hereto, Defendants each employed fifteen (15) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

17. At all times relevant hereto, Plaintiff would have worked for Defendants in this judicial district but for the discrimination against Plaintiff on account of Plaintiff's disability committed by Defendants as alleged herein.

## III. EXHAUSTION OF APPLICABLE ADMINISTRATIVE REMEDIES:

18. Plaintiff has exhausted all applicable administrative remedies by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in this matter. Plaintiff's EEOC Notice of Right-to-Sue is attached hereto as Exhibit "A." The Charge was dual-filed or cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

19. The EEOC ultimately found for Plaintiff and against Defendants that Defendants discriminated against Plaintiff by failing to hire him due to his disability. The EEOC found that there was reasonable cause to believe that violations of the statutes occurred. After the EEOC determined that Defendants discriminated against Plaintiff by failing to hire him, Defendants refused to conciliate. As a result, because Plaintiff was represented by counsel, the EEOC subsequently issued Plaintiff a right-to-sue letter for Plaintiff to institute the instant action against Defendants. *See* EEOC Notice of Right-to-Sue, dated June 4, 2026, attached hereto as Exhibit "A." *See also* EEOC Determination in favor of Plaintiff and against Defendants, dated March 2, 2026, attached hereto as Exhibit "B."

20. The EEOC Determination finding for Plaintiff and against Defendants stated: "Charging Party alleges he was subjected to discrimination on the basis of his Disability when Respondent denied his hiring in violation of the ADA. Based on an analysis of the statements and documents provided, I have determined that the evidence establishes a violation of the ADA for at least the following reasons: Evidence supports that Charging Party was subjected to differential treatment because of his disability, when Respondent failed to hire him due to his disability. Evidence submitted support Charging Party's claim that the Respondent was aware of his disability when he utilized the telecommunication service and attempted to contact Respondent on four occasions after the initial interview process, but his attempts at contact were ignored." *See* EEOC Determination, dated March 2, 2026, attached hereto as Exhibit "B."

## IV. CLAIMS FOR RELIEF:

### COUNT I:
### FAILURE-TO-HIRE BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12112(a), *et seq.*
**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

21. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

22. Defendants failed to hire Plaintiff due to his actual or perceived disability in violation of 42 U.S.C. § 12112(a), the Americans with Disabilities Act ("ADA"), as amended.

23. Plaintiff is deaf. Plaintiff has an actual physical impairment that limits the major life activity and the major bodily function of hearing. The Americans with Disabilities Act ("ADA"), as amended, at 42 U.S.C. § 12102(2)(A), provides that hearing is a major life activity.

*See* 42 U.S.C. § 12102(2)(A). Plaintiff has a record of a disability related to the same. Plaintiff was perceived/regarded as disabled by Defendants.

24. Defendants had notice or knowledge of Plaintiff's disability.

25. Plaintiff is a qualified individual with a disability.

26. Plaintiff could have performed the position he sought to hold with Defendants with or without reasonable accommodation.

27. On or about July 7, 2024, Plaintiff applied for an open position with Defendants. The position was a Detail Manager position at Defendants' Lexus dealership located in Willow Grove, Pennsylvania. The position paid approximately seventy-five thousand dollars ($75,000.00) per year. The position would have included cleaning the vehicles and other related tasks at Defendants' dealership.

28. Plaintiff submitted his résumé for the position to Defendants through Indeed.com. Based on a review of Plaintiff's resume, Defendants selected Plaintiff to be interviewed for the position. Plaintiff, therefore, alleges that he objectively met the minimum qualifications or requirements for the role he sought to hold with Defendants with or without reasonable accommodation.

29. On or about July 18, 2024, Plaintiff received a phone call from Mr. Joseph Pistilli, General Manager, an employee employed by Defendants, with respect to the position.

30. On the July 18th phone call, Plaintiff utilized a telecommunications relay service for the deaf. On the telephone call, Mr. Joseph Pistilli, General Manager for Defendants, commented that Mr. Pistilli believed Plaintiff to be "fake," or words to that effect. Plaintiff was not "fake." Plaintiff was using a telecommunications relay service for the deaf.

31. When Plaintiff explained that he was deaf to Mr. Pistilli, Mr. Pistilli stated to Plaintiff that Mr. Pistilli was not interested, or words to that effect. Mr. Pistilli abruptly terminated the phone call.

32. Mr. Pistilli, General Manager, questioned whether Plaintiff was an "A.I. robot," writing in his interviewer notes on Indeed.com, following the interview, on July 18, 2024, "It seemed like I was talking to a robot. I do not think it was a person. AI?"

33. Defendants also stated to the EEOC in Defendants' Position Statement, dated October 10, 2024, that Mr. Pistilli believed Plaintiff was an "A.I. robot" during the phone interview for the position.

34. Mr. Pistilli prepared a notarized Affidavit that accompanied Defendants' Position Statement submitted to the EEOC. In the notarized Affidavit, Mr. Pistilli stated, "The voice on the phone sounded like a female robot. During the call I thought I was talking to an Artificial Intelligence (AI) robot and that the phone call was a scam." *See* Affidavit of Joseph Pistilli, dated August 27, 2024, at paragraph 9.

35. Plaintiff contends that failing to hire a deaf or hearing impaired person attempting to use an American Sign Language ("ASL") interpreter based on the assumption they are an "A.I. robot" constitutes disability discrimination. Further, a showing of an intent to discriminate is not required for a plaintiff bringing a failure-to-accommodate claim.

36. The admission by Defendants that Mr. Pistilli questioned whether Plaintiff was an "A.I. robot" before terminating the phone interview, and Mr. Pistilli's statement in his notarized Affidavit submitted to the EEOC that he thought the call was a "scam," further corroborates Plaintiff's allegation that Mr. Pistilli referred to Plaintiff on the call as being "fake," or words to that effect. If Mr. Pistilli thought that Plaintiff was "A.I." and that the call was a "scam," then it

is more likely than not that Mr. Pistilli did refer to Plaintiff as being "fake," or words to that effect, during the phone call. However, the fact that Mr. Pistilli called Plaintiff "fake," or words to that effect, is not contained anywhere in Mr. Pistilli's notarized Affidavit supplied to the EEOC.

37. In the Indeed.com notes for the interview that were prepared by Mr. Pistilli, Mr. Pistilli stated that it "seemed" like Plaintiff was an A.I. robot, and Mr. Pistilli questioned, "AI?", therefore, Mr. Pistilli, at most, was just questioning whether Plaintiff was A.I. or not, he admits that he was only speculating, and that he did not actually know whether or not Plaintiff was A.I. By his own admission, Mr. Pistilli was not sure, and by his own admission, Mr. Pistilli made an assumption about Plaintiff. This is not something that Defendants acknowledged in their Position Statement nor was it something that Mr. Pistilli acknowledged in the notarized Affidavit he prepared for and submitted to the EEOC. Since Mr. Pistilli admits that he did not actually know whether Plaintiff was A.I. or not, Mr. Pistilli is, therefore, alleged not to have done what a reasonable person would have done in his position which is to have asked the individual whether they were A.I or not. Mr. Pistilli should have asked Plaintiff if he was not sure. Mr. Pistilli never did. Mr. Pistilli also never stated that he asked in the Affidavit he prepared and submitted to the EEOC. Instead, Mr. Pistilli relied on his assumption, even though he was not sure, and, as a result, he denied Plaintiff employment. An assumption or a stereotype about a person that is incorrect but which is held in ignorance is the very definition of prejudice or discrimination. Nonetheless, Plaintiff contends that the interpreter announcing that Plaintiff was deaf at the beginning of the call, and Plaintiff notifying Mr. Pistilli that he was deaf during the call after being called "fake," or words to that effect, gave Mr. Pistilli notice that Plaintiff was deaf and utilizing a telecommunications relay service, and, therefore, that there was no legitimate reason for Mr. Pistilli to believe that Plaintiff was A.I. It is also not believed that Mr. Pistilli had ever actually

received a phone call from an "A.I. robot" before upon which he would have even had the ability to base such an incorrect assumption.

38. Plaintiff called Defendants' Willow Grove location back following the interview on July 18, 2024, no one answered, and his call was never returned.

39. Plaintiff also attempted to call Defendants back three additional times, on July 20, 2024, and Defendants still never returned his call.

40. Defendants' counsel subsequently communicated with Plaintiff's counsel about the matter after Plaintiff's Counsel wrote to Defendants about the matter. On August 8, 2024, Defendants' counsel sent a letter to Plaintiff's counsel stating, "[A]t no point did [Plaintiff] inform TGI [Defendant] that he was using a telecommunications service for the deaf or hard of hearing during his phone call with TGI nor did TGI have any knowledge in this regard." The aforementioned contention by Defendants is not credible, constitutes an inconsistent statement, and Plaintiff contends it should be considered evidence of pretext. During the phone call with Mr. Pistilli, General Manager, Plaintiff communicated that he was deaf after Mr. Pistilli referred to him as "fake," or words to that effect. In addition, the interpreter on the line clearly identified herself as an interpreter for the deaf at the beginning of the phone call. The interpreter customarily does so at the beginning of every phone call. It is not credible that Mr. Pistilli did not know he was communicating using a third-party telecommunications relay service for the deaf. Mr. Pistilli knew he was communicating with a person who was deaf because Plaintiff communicated that fact to Mr. Pistilli directly and also the interpreter announced that fact at the beginning of the phone call. Mr. Pistilli had notice or knowledge of Plaintiff's covered disability at that time.

41. Defendants subsequently submitted a Position Statement to the Equal Employment Opportunity Commission ("EEOC"), on October 10, 2024, in which Plaintiff contends Defendants

made several additional inconsistent statements to the EEOC. Defendants represented to the EEOC in their Position Statement that they did not know Plaintiff had a disability, that Plaintiff did not notify Defendants of a disability, that Defendants did not know Plaintiff was attempting to use a telecommunications relay service for the deaf, and that Plaintiff did not communicate further with Defendants following the phone interview, all of which statements Plaintiff contends to be false. In fact, Plaintiff tried to call back after the initial phone interview once on July 18, 2024, and three additional times on July 20, 2024, but Defendants never returned Plaintiff's calls. Plaintiff alleges that the aforementioned statements constitute inconsistent statements Defendants made to the EEOC and should also be considered evidence of pretext.

42. Mr. Pistilli also stated, in his notarized Affidavit submitted to the EEOC, that Plaintiff never informed Mr. Pistilli that Plaintiff was deaf, that Mr. Pistilli was not informed that he was speaking with someone using a telecommunications relay service for the deaf, and that Plaintiff never communicated further with the company following the initial phone interview. Plaintiff contends that these statements are false and should also be considered to constitute inconsistent statements and should be considered evidence of pretext.

43. The telecommunications relay service utilized by Plaintiff for the July 18, 2024 phone call between Plaintiff and Mr. Pistilli, General Manager of Defendants, was called, "Purple VRS." Purple VRS is an American Sign Language ("ASL") interpreting service for the deaf or hearing impaired. "VRS" stands for "Video Relay Service." The service operates by connecting the hearing-impaired client to a sign language interpreter, who then places a phone call for the client to the client's desired number. The sign language interpreter then uses the video feature on their phone much like a FaceTime or a video call to communicate what is being said to the client using ASL, and to verbally communicate to the recipient of the call what the client is saying.

Plaintiff contends that when he places a phone call using Purple VRS, the sign language interpreter places the desired call and then begins the call, every time, much like a prompt or like a script, with the following: "Hello, a person using sign language is calling you through Purple VRS. I am Sign Language Interpreter Number [the interpreter provides their interpreter number here.]. Please hold while I connect you." The call then proceeds from there with the client speaking through the ASL interpreter. The service is called "Announce Relay."

44. Plaintiff could have excelled in the position, where he would have been able to lip read when communicating in person with other employees or customers, but Defendants never provided Plaintiff an opportunity to do so. The accommodation Plaintiff was requesting to utilize for the telephone portion of the job interview was the use of the Purple VRS service, which was necessary at that time because, on the phone, Plaintiff was not able to lip read.

45. Defendants offered the position or filled the position with someone who was not deaf or who did not have a hearing impairment or another disability.

46. The Equal Employment Opportunity Commission ("EEOC") ultimately found for Plaintiff and against Defendants that Defendants discriminated against Plaintiff by failing to hire him due to his disability. The EEOC found that there was reasonable cause to believe that violations of the statutes occurred. After the EEOC determined that Defendants discriminated against Plaintiff by failing to hire him, Defendants refused to conciliate. As a result, because Plaintiff was represented by counsel, the EEOC subsequently issued Plaintiff a right-to-sue letter for Plaintiff to institute the instant action against Defendants. *See* EEOC Notice of Right-to-Sue, dated June 4, 2026, attached hereto as Exhibit "A." *See also* EEOC Determination in favor of Plaintiff and against Defendants, dated March 2, 2026, attached hereto as Exhibit "B."

47. The EEOC Determination finding for Plaintiff and against Defendants stated: "Charging Party alleges he was subjected to discrimination on the basis of his Disability when Respondent denied his hiring in violation of the ADA. Based on an analysis of the statements and documents provided, I have determined that the evidence establishes a violation of the ADA for at least the following reasons: Evidence supports that Charging Party was subjected to differential treatment because of his disability, when Respondent failed to hire him due to his disability. Evidence submitted support Charging Party's claim that the Respondent was aware of his disability when he utilized the telecommunication service and attempted to contact Respondent on four occasions after the initial interview process, but his attempts at contact were ignored." *See* EEOC Determination, dated March 2, 2026, attached as Exhibit "B."

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

**COUNT II:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. § 12112(b)(5)(A), *et seq.***

**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

48. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

49. Defendants failed to reasonably accommodate Plaintiff's disability and denied him employment in violation of 42 U.S.C. § 12112(b)(5)(A). Section 12112(b)(5)(A) of the ADA provides that "the term 'discriminate' includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

50. Plaintiff is deaf. Plaintiff has an actual physical impairment that limits the major life activity and the major bodily function of hearing. The Americans with Disabilities Act ("ADA"), as amended, at 42 U.S.C. § 12102(2)(A), provides that hearing is a major life activity. *See* 42 U.S.C. § 12102(2)(A). Plaintiff has a record of a disability related to the same.

51. Defendants had notice or knowledge of Plaintiff's disability.

52. Plaintiff is a qualified individual with a disability.

53. Plaintiff could have performed the essential functions of the position he sought to hold with Defendants with reasonable accommodation.

54. On or about July 7, 2024, Plaintiff applied for an open position with Defendants. The position was a Detail Manager position at Defendants' Lexus dealership located in Willow Grove, Pennsylvania. The position would have included cleaning the vehicles and other related tasks at Defendants' dealership.

55. Plaintiff submitted his résumé for the position to Defendants through Indeed.com. Based on a review of Plaintiff's resume, Defendants selected Plaintiff to be interviewed for the position. Plaintiff, therefore, alleges that he objectively met the minimum qualifications or requirements for the role he sought to hold with Defendants with reasonable accommodation.

56. On or about July 18, 2024, Plaintiff received a phone call from Mr. Joseph Pistilli, General Manager, an employee employed by Defendants, with respect to the position.

57. On the July 18th phone call, Plaintiff utilized a telecommunications relay service for the deaf. On the telephone call, Mr. Joseph Pistilli, General Manager for Defendants, commented that Mr. Pistilli believed Plaintiff to be "fake," or words to that effect. Plaintiff was not "fake." Plaintiff was using a telecommunications relay service for the deaf.

58. When Plaintiff explained that he was deaf to Mr. Pistilli, Mr. Pistilli stated to Plaintiff that Mr. Pistilli was not interested, or words to that effect. Mr. Pistilli abruptly terminated the phone call.

59. Mr. Pistilli, General Manager, questioned whether Plaintiff was an "A.I. robot," writing in his interviewer notes on Indeed.com, following the interview, on July 18, 2024, "It seemed like I was talking to a robot. I do not think it was a person. AI?"

60. Defendants also stated to the EEOC in Defendants' Position Statement, dated October 10, 2024, that Mr. Pistilli believed Plaintiff was an "A.I. robot" during the phone interview for the position.

61. Mr. Pistilli prepared a notarized Affidavit that accompanied Defendants' Position Statement submitted to the EEOC. In the notarized Affidavit, Mr. Pistilli stated, "The voice on the phone sounded like a female robot. During the call I thought I was talking to an Artificial

Intelligence (AI) robot and that the phone call was a scam." *See* Affidavit of Joseph Pistilli, dated August 27, 2024, at paragraph 9.

62. Plaintiff contends that failing to hire a deaf or hearing impaired person attempting to use an ASL interpreter based on the assumption they are an "A.I. robot" constitutes disability discrimination.

63. In the Indeed.com notes for the interview that were prepared by Mr. Pistilli, Mr. Pistilli stated that it "seemed" like Plaintiff was an A.I. robot, and Mr. Pistilli questioned, "AI?", therefore, Mr. Pistilli, at most, was just questioning whether Plaintiff was A.I. or not, he admits that he was only speculating, and that he did not actually know whether or not Plaintiff was A.I. By his own admission, Mr. Pistilli was not sure, and by his own admission, Mr. Pistilli made an assumption about Plaintiff. This is not something that Defendants acknowledged in their Position Statement nor was it something that Mr. Pistilli acknowledged in the notarized Affidavit he prepared for and submitted to the EEOC. Since Mr. Pistilli admits that he did not actually know whether Plaintiff was A.I. or not, Mr. Pistilli is, therefore, alleged not to have done what a reasonable person would have done in his position which is to have asked the individual whether they were A.I or not. Mr. Pistilli should have asked Plaintiff if he was not sure. Mr. Pistilli never did. Mr. Pistilli also never stated that he asked in the Affidavit he prepared and submitted to the EEOC. Instead, Mr. Pistilli relied on his assumption, even though he was not sure, and, as a result, he denied Plaintiff employment. An assumption or a stereotype about a person that is incorrect but which is held in ignorance is the very definition of prejudice or discrimination. Nonetheless, Plaintiff contends that the interpreter announcing that Plaintiff was deaf at the beginning of the call, and Plaintiff notifying Mr. Pistilli that he was deaf during the call after being called "fake," or words to that effect, gave Mr. Pistilli notice that Plaintiff was deaf and utilizing a

telecommunications relay service, and, therefore, that there was no legitimate reason for Mr. Pistilli to believe that Plaintiff was A.I. It is also not believed that Mr. Pistilli had ever actually received a phone call from an "A.I. robot" before upon which he would have even had the ability to base such an incorrect assumption.

64. Plaintiff called Defendants' Willow Grove location back following the interview on July 18, 2024, no one answered, and his call was never returned.

65. Plaintiff also attempted to call Defendants back three additional times, on July 20, 2024, and Defendants still never returned his call.

66. Plaintiff was requesting the ability to participate in the phone interview portion of the interview for the position with Defendants by utilizing a telecommunications relay service, he communicated that he was deaf to Mr. Pistilli, and the interpreter on the line announced at the beginning of the call that Plaintiff was deaf and was attempting to use the telecommunications relay service. Defendants failed or refused to accommodate Plaintiff's request, failed to engage in the interactive process, and abruptly terminated the interview.

67. Plaintiff requested accommodation in the form of using a telecommunications relay service that would have allowed Plaintiff to be able to utilize American Sign Language ("ASL") for the telephone portion of the job interview. Defendants failed or refused to permit Plaintiff to utilize the requested accommodation, the Purple VRS service, abruptly terminated the interview, and then did not return Plaintiff's calls, denying Plaintiff employment.

68. An intent to discriminate is not required for a failure-to-accommodate claim. A failure-to-accommodate claim does not require the employee to demonstrate evidence of discriminatory intent or that the employer's action was motivated by a discriminatory animus directed at his disability. *See, e.g., Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264

(1st Cir. 1999); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283-84 (7th Cir. 1996); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 n.12 (10th Cir. 1999) (*en banc*); *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2002); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 362 (E.D.N.Y. 2012); *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253 (3d Cir. 1999); *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 737 (3d Cir. 2009).

69. Plaintiff could have excelled in the position, where he would have been able to lip read when communicating in person with other employees or customers, but Defendants never provided Plaintiff an opportunity to do so. The accommodation Plaintiff was requesting to utilize for the telephone portion of the job interview was the use of the Purple VRS service, which was necessary at that time because, on the phone, Plaintiff was not able to lip read.

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

## COUNT III:
## RETALIATORY FAILURE-TO-HIRE/RETALIATION FOR REQUEST FOR REASONABLE ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, AT 42 U.S.C. § 12203(a)

**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

70. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

71. Plaintiff requested a reasonable accommodation and suffered retaliation in the form of retaliatory failure-to-hire in violation of 42 U.S.C. § 12203(a).

72. Plaintiff's request for reasonable accommodation constitutes opposing an act or practice made unlawful by the ADA.

73. By requesting a reasonable accommodation on account of Plaintiff's disability, Plaintiff exercised a statutory right under the ADA, and signaled opposition to being treated in a discriminatory manner, or to having his disability or request for reasonable accommodation ignored by Defendants.

74. On or about July 7, 2024, Plaintiff applied for an open position with Defendants. The position was a Detail Manager position at Defendants' Lexus dealership located in Willow Grove, Pennsylvania.

75. Plaintiff submitted his résumé for the position to Defendants through Indeed.com. Based on a review of Plaintiff's resume, Defendants selected Plaintiff to be interviewed for the position. Plaintiff, therefore, alleges that he objectively met the minimum qualifications or requirements for the role he sought to hold with Defendants with reasonable accommodation.

76. On or about July 18, 2024, Plaintiff received a phone call from Mr. Joseph Pistilli, General Manager, an employee employed by Defendants, with respect to the position.

77. On the July 18th phone call, Plaintiff utilized a telecommunications relay service for the deaf. The telecommunications relay service utilized by Plaintiff for the July 18, 2024 phone

call between Plaintiff and Mr. Pistilli, General Manager of Defendants, was called, "Purple VRS." Purple VRS is an American Sign Language ("ASL") interpreting service for the deaf or hearing impaired. "VRS" stands for "Video Relay Service." The service operates by connecting the hearing-impaired client to a sign language interpreter, who then places a phone call for the client to the client's desired number. The sign language interpreter then uses the video feature on their phone much like a FaceTime or a video call to communicate what is being said to the client using ASL, and to verbally communicate to the recipient of the call what the client is saying. Plaintiff contends that when he places a phone call using Purple VRS, the sign language interpreter places the desired call and then begins the call, every time, much like a prompt or like a script, with the following: "Hello, a person using sign language is calling you through Purple VRS. I am Sign Language Interpreter Number [the interpreter provides their interpreter number here.]. Please hold while I connect you." The call then proceeds from there with the client speaking through the ASL interpreter. The service is called "Announce Relay."

78. On the telephone call, Mr. Joseph Pistilli, General Manager for Defendants, commented that Mr. Pistilli believed Plaintiff to be "fake," or words to that effect. Plaintiff was not "fake." Plaintiff was using a telecommunications relay service for the deaf.

79. When Plaintiff explained that he was deaf to Mr. Pistilli, Mr. Pistilli stated to Plaintiff that Mr. Pistilli was not interested, or words to that effect. Mr. Pistilli abruptly terminated the phone call.

80. Mr. Pistilli, General Manager, questioned whether Plaintiff was an "A.I. robot," writing in his interviewer notes on Indeed.com, following the interview, on July 18, 2024, "It seemed like I was talking to a robot. I do not think it was a person. AI?"

81. Defendants also stated to the EEOC in Defendants' Position Statement, dated October 10, 2024, that Mr. Pistilli believed Plaintiff was an "A.I. robot" during the phone interview for the position.

82. Mr. Pistilli prepared a notarized Affidavit that accompanied Defendants' Position Statement submitted to the EEOC. In the notarized Affidavit, Mr. Pistilli stated, "The voice on the phone sounded like a female robot. During the call I thought I was talking to an Artificial Intelligence (AI) robot and that the phone call was a scam." *See* Affidavit of Joseph Pistilli, dated August 27, 2024, at paragraph 9.

83. Plaintiff called Defendants' Willow Grove location back following the interview on July 18, 2024, no one answered, and his call was never returned.

84. Plaintiff also attempted to call Defendants back three additional times, on July 20, 2024, and Defendants still never returned his call.

85. Plaintiff identifies unusually suggestive temporal proximity, and timing plus inconsistent statements.

86. One inconsistent statement being alleged by Plaintiff was that Defendants' counsel subsequently communicated with Plaintiff's counsel about the matter, on August 8, 2024, when, at that time, Defendants' counsel sent a letter to Plaintiff's counsel stating, "[A]t no point did [Plaintiff] inform TGI [Defendant] that he was using a telecommunications service for the deaf or hard of hearing during his phone call with TGI nor did TGI have any knowledge in this regard." The aforementioned contention by Defendants is not credible and should be considered to constitute an inconsistent statement. During the phone call with Mr. Pistilli, General Manager, Plaintiff communicated that he was deaf after Mr. Pistilli referred to him as "fake," or words to that effect. In addition, the interpreter on the line clearly identified herself as an interpreter for the

deaf at the beginning of the phone call. The interpreter customarily does so at the beginning of every phone call. It is not credible that Mr. Pistilli did not know he was communicating using a third-party telecommunications relay service for the deaf. Mr. Pistilli knew he was communicating with a person who was deaf because Plaintiff communicated that fact to Mr. Pistilli directly and also the interpreter announced that fact at the beginning of the phone call.

87. Plaintiff identifies several additional inconsistent statements contained in Defendants' Position Statement submitted to the EEOC in this matter. Defendants subsequently submitted a Position Statement to the EEOC, on October 10, 2024, in which Defendants represented to the EEOC that they did not know Plaintiff had a disability, that Plaintiff did not notify Defendants of a disability, that Defendants did not know Plaintiff was attempting to use a telecommunications relay service for the deaf, and that Plaintiff did not communicate further with Defendants following the phone interview, all of which statements Plaintiff contends to be false. In fact, Plaintiff tried to call back after the initial phone interview once on July 18, 2024, and three additional times on July 20, 2024, but Defendants never returned Plaintiff's calls. Plaintiff alleges that the aforementioned statements should be considered to constitute inconsistent statements Defendants made to the EEOC in this matter.

88. Plaintiff identifies additional inconsistent statements made by Mr. Pistilli in his notarized Affidavit submitted to the EEOC. Mr. Pistilli stated, in his notarized Affidavit submitted to the EEOC, that Plaintiff never informed Mr. Pistilli that Plaintiff was deaf, that Mr. Pistilli was not informed that he was speaking with someone using a telecommunications relay service for the deaf, and that Plaintiff never communicated further with the company following the initial phone interview. Plaintiff contends that these statements are false and should also be considered to constitute inconsistent statements.

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

**COUNT IV:**
**RETALIATION/RETALIATORY FAILURE-TO-HIRE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, AT 42 U.S.C. § 12203(b)**
**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

89. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

90. Plaintiff alleges interference with rights in violation of 42 U.S.C. § 12203(b) by Defendants' failure to hire Plaintiff in retaliation for Plaintiff's request for a reasonable accommodation and in retaliation for his need for an accommodation.

91. On or about July 7, 2024, Plaintiff applied for an open position with Defendants. The position was a Detail Manager position at Defendants' Lexus dealership located in Willow Grove, Pennsylvania.

92. Plaintiff submitted his résumé for the position to Defendants through Indeed.com. Based on a review of Plaintiff's resume, Defendants selected Plaintiff to be interviewed for the

position. Plaintiff, therefore, alleges that he objectively met the minimum qualifications or requirements for the role he sought to hold with Defendants with reasonable accommodation.

93. On or about July 18, 2024, Plaintiff received a phone call from Mr. Joseph Pistilli, General Manager, an employee employed by Defendants, with respect to the position.

94. On the July 18th phone call, Plaintiff utilized a telecommunications relay service for the deaf. The telecommunications relay service utilized by Plaintiff for the July 18, 2024 phone call between Plaintiff and Mr. Pistilli, General Manager of Defendants, was called, "Purple VRS." Purple VRS is an American Sign Language ("ASL") interpreting service for the deaf or hearing impaired. "VRS" stands for "Video Relay Service." The service operates by connecting the hearing-impaired client to a sign language interpreter, who then places a phone call for the client to the client's desired number. The sign language interpreter then uses the video feature on their phone much like a FaceTime or a video call to communicate what is being said to the client using ASL, and to verbally communicate to the recipient of the call what the client is saying. Plaintiff contends that when he places a phone call using Purple VRS, the sign language interpreter places the desired call and then begins the call, every time, much like a prompt or like a script, with the following: "Hello, a person using sign language is calling you through Purple VRS. I am Sign Language Interpreter Number [the interpreter provides their interpreter number here.]. Please hold while I connect you." The call then proceeds from there with the client speaking through the ASL interpreter. The service is called "Announce Relay."

95. On the telephone call, Mr. Joseph Pistilli, General Manager for Defendants, commented that Mr. Pistilli believed Plaintiff to be "fake," or words to that effect. Plaintiff was not "fake." Plaintiff was using a telecommunications relay service for the deaf.

96. When Plaintiff explained that he was deaf to Mr. Pistilli, Mr. Pistilli stated to Plaintiff that Mr. Pistilli was not interested, or words to that effect. Mr. Pistilli abruptly terminated the phone call.

97. Mr. Pistilli, General Manager, questioned whether Plaintiff was an "A.I. robot," writing in his interviewer notes on Indeed.com, following the interview, on July 18, 2024, "It seemed like I was talking to a robot. I do not think it was a person. AI?"

98. Defendants also stated to the EEOC in Defendants' Position Statement, dated October 10, 2024, that Mr. Pistilli believed Plaintiff was an "A.I. robot" during the phone interview for the position.

99. Mr. Pistilli prepared a notarized Affidavit that accompanied Defendants' Position Statement submitted to the EEOC. In the notarized Affidavit, Mr. Pistilli stated, "The voice on the phone sounded like a female robot. During the call I thought I was talking to an Artificial Intelligence (AI) robot and that the phone call was a scam." *See* Affidavit of Joseph Pistilli, dated August 27, 2024, at paragraph 9.

100. Plaintiff called Defendants' Willow Grove location back following the interview on July 18, 2024, no one answered, and his call was never returned.

101. Plaintiff also attempted to call Defendants back three additional times, on July 20, 2024, and Defendants still never returned his call.

102. Plaintiff identifies unusually suggestive temporal proximity, and timing plus inconsistent statements.

103. One inconsistent statement being alleged by Plaintiff was that Defendants' counsel subsequently communicated with Plaintiff's counsel about the matter, on August 8, 2024, when, at that time, Defendants' counsel sent a letter to Plaintiff's counsel stating, "[A]t no point did

[Plaintiff] inform TGI [Defendant] that he was using a telecommunications service for the deaf or hard of hearing during his phone call with TGI nor did TGI have any knowledge in this regard." The aforementioned contention by Defendants is not credible and should be considered to constitute an inconsistent statement. During the phone call with Mr. Pistilli, General Manager, Plaintiff communicated that he was deaf after Mr. Pistilli referred to him as "fake," or words to that effect. In addition, the interpreter on the line clearly identified herself as an interpreter for the deaf at the beginning of the phone call. The interpreter customarily does so at the beginning of every phone call. It is not credible that Mr. Pistilli did not know he was communicating using a third-party telecommunications relay service for the deaf. Mr. Pistilli knew he was communicating with a person who was deaf because Plaintiff communicated that fact to Mr. Pistilli directly and also the interpreter announced that fact at the beginning of the phone call.

104. Plaintiff identifies several additional inconsistent statements contained in Defendants' Position Statement submitted to the EEOC in this matter. Defendants subsequently submitted a Position Statement to the EEOC, on October 10, 2024, in which Defendants represented to the EEOC that they did not know Plaintiff had a disability, that Plaintiff did not notify Defendants of a disability, that Defendants did not know Plaintiff was attempting to use a telecommunications relay service for the deaf, and that Plaintiff did not communicate further with Defendants following the phone interview, all of which statements Plaintiff contends to be false. In fact, Plaintiff tried to call back after the initial phone interview once on July 18, 2024, and three additional times on July 20, 2024, but Defendants never returned Plaintiff's calls. Plaintiff alleges that the aforementioned statements should be considered to constitute inconsistent statements Defendants made to the EEOC in this matter.

105. Plaintiff identifies additional inconsistent statements made by Mr. Pistilli in his notarized Affidavit submitted to the EEOC. Mr. Pistilli stated, in his notarized Affidavit submitted to the EEOC, that Plaintiff never informed Mr. Pistilli that Plaintiff was deaf, that Mr. Pistilli was not informed that he was speaking with someone using a telecommunications relay service for the deaf, and that Plaintiff never communicated further with the company following the initial phone interview. Plaintiff contends that these statements are false and should also be considered to constitute inconsistent statements.

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

**COUNT V:**
**FAILURE-TO-HIRE BASED ON DISABILITY IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"), 43 P.S. § 955(a)**
**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

106. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

107. Defendants failed to hire Plaintiff on account of his actual or perceived disability in violation of § 955(a) of the PHRA. *See* 43 P.S. § 955(a).

108. The PHRA, codified at 43 P.S. § 951, *et seq.*, specifically § 955(a) of the PHRA, provides, in pertinent part, that, "It shall be an unlawful discriminatory practice … (a) For any employer because of the … non-job related handicap or disability … of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract … ." 43 P.S. § 955(a).

109. Plaintiff is deaf. Plaintiff is a qualified individual with a disability. Plaintiff could perform the position he sought to hold with Defendants with or without reasonable accommodation. Defendants had notice or knowledge of Plaintiff's disability prior to Defendants' failure to hire Plaintiff.

110. In July 2024, Plaintiff applied for an open position with Defendants for the position of Detail Manager.

111. On July 18, 2024, Defendants rejected Plaintiff for the position and failed to hire him on account of his actual or perceived disability.

112. Plaintiff attempted to call Defendants back on July 18, 2024, and then three additional times on July 20, 2024. However, Defendants did not return Plaintiff's calls.

113. Defendants offered the position or filled the position to which Plaintiff applied with someone who was not deaf or who did not have a hearing impairment or another disability.

114. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his actual or perceived disability in violation of § 955(a) of the PHRA.

*See* 43 P.S. § 955(a). Defendants failed to hire Plaintiff on the basis of Plaintiff's actual or perceived disability in violation of § 955(a) of the PHRA. At all times relevant hereto, Defendants acted with intent to discriminate.

115. Defendants engaged in an unlawful discriminatory practice in violation of § 955(e) of the PHRA by aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct complained of herein. *See* 43 P.S. § 955(e).

116. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of the PHRA at § 955.

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

## COUNT VI:
## FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(a)
**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

117. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

118. Defendants failed to reasonably accommodate Plaintiff's disability denying him employment on account of his actual or perceived disability in violation of § 955(a) of the PHRA. *See* 43 P.S. § 955(a). To discriminate includes to fail to make a reasonable accommodation for an employee's disability.

119. Defendants violated 16 Pa. Code § 44.14 which sets forth the requirement that an employer must make reasonable accommodations for the known disability of an applicant or an employee absent the showing of an undue hardship.

120. Plaintiff is deaf. Plaintiff suffers from an actual physical impairment that substantially limits the major life activity and major bodily function of hearing. Plaintiff has a record of a disability related to the same. Defendants had notice or knowledge of Plaintiff's disability prior to Defendants' failure to hire Plaintiff.

121. Plaintiff is a qualified individual with a disability. Plaintiff could perform the position he sought to hold with Defendants with reasonable accommodation.

122. On or about July 7, 2024, Plaintiff applied for an open position with Defendants. The position was a Detail Manager position at Defendants' Lexus dealership located in Willow Grove, Pennsylvania. The position paid approximately seventy-five thousand dollars ($75,000.00) per year. The position would have included cleaning the vehicles and other related tasks at Defendants' dealership.

123. Plaintiff submitted his résumé for the position to Defendants through Indeed.com. Based on a review of Plaintiff's resume, Defendants selected Plaintiff to be interviewed for the position. Plaintiff, therefore, alleges that he objectively met the minimum qualifications or requirements for the role he sought to hold with Defendants with reasonable accommodation.

124. On or about July 18, 2024, Plaintiff received a phone call from Mr. Joseph Pistilli, General Manager, an employee employed by Defendants, with respect to the position.

125. On the July 18th phone call, Plaintiff utilized a telecommunications relay service for the deaf. On the telephone call, Mr. Joseph Pistilli, General Manager for Defendants, commented that Mr. Pistilli believed Plaintiff to be "fake," or words to that effect. Plaintiff was not "fake." Plaintiff was using a telecommunications relay service for the deaf.

126. When Plaintiff explained that he was deaf to Mr. Pistilli, Mr. Pistilli stated to Plaintiff that Mr. Pistilli was not interested, or words to that effect. Mr. Pistilli abruptly terminated the phone call.

127. Mr. Pistilli, General Manager, questioned whether Plaintiff was an "A.I. robot," writing in his interviewer notes on Indeed.com, following the interview, on July 18, 2024, "It seemed like I was talking to a robot. I do not think it was a person. AI?"

128. Defendants also stated to the EEOC in Defendants' Position Statement, dated October 10, 2024, that Mr. Pistilli believed Plaintiff was an "A.I. robot" during the phone interview for the position.

129. Mr. Pistilli prepared a notarized Affidavit that accompanied Defendants' Position Statement submitted to the EEOC. In the notarized Affidavit, Mr. Pistilli stated, "The voice on the phone sounded like a female robot. During the call I thought I was talking to an Artificial Intelligence (AI) robot and that the phone call was a scam." *See* Affidavit of Joseph Pistilli, dated August 27, 2024, at paragraph 9.

130. Plaintiff contends that failing to hire a deaf or hearing impaired person attempting to use an ASL interpreter based on the assumption they are an "A.I. robot" constitutes disability discrimination.

131. In the Indeed.com notes for the interview that were prepared by Mr. Pistilli, Mr. Pistilli stated that it "seemed" like Plaintiff was an A.I. robot, and Mr. Pistilli questioned, "AI?", therefore, Mr. Pistilli, at most, was just questioning whether Plaintiff was A.I. or not, he admits that he was only speculating, and that he did not actually know whether or not Plaintiff was A.I. By his own admission, Mr. Pistilli was not sure, and by his own admission, Mr. Pistilli made an assumption about Plaintiff. This is not something that Defendants acknowledged in their Position Statement nor was it something that Mr. Pistilli acknowledged in the notarized Affidavit he prepared for and submitted to the EEOC. Since Mr. Pistilli admits that he did not actually know whether Plaintiff was A.I. or not, Mr. Pistilli is, therefore, alleged not to have done what a reasonable person would have done in his position which is to have asked the individual whether they were A.I or not. Mr. Pistilli should have asked Plaintiff if he was not sure. Mr. Pistilli never did. Mr. Pistilli also never stated that he did in the Affidavit he prepared and submitted to the EEOC. Instead, Mr. Pistilli relied on his assumption, even though he was not sure, and, as a result, he denied Plaintiff employment. An assumption or a stereotype about a person that is incorrect but which is held in ignorance is the very definition of prejudice or discrimination. Nonetheless, Plaintiff contends that the interpreter announcing that Plaintiff was deaf at the beginning of the call, and Plaintiff notifying Mr. Pistilli that he was deaf during the call after being called "fake," or words to that effect, gave Mr. Pistilli notice that Plaintiff was deaf and utilizing a telecommunications relay service, and, therefore, that there was no legitimate reason for Mr. Pistilli to believe that Plaintiff was A.I. It is also not believed that Mr. Pistilli had ever actually received a phone call from an "A.I. robot" before upon which he would have even had the ability to base such an incorrect assumption.

132. Plaintiff called Defendants' Willow Grove location back following the interview on July 18, 2024, no one answered, and his call was never returned.

133. Plaintiff also attempted to call Defendants back three additional times, on July 20, 2024, and Defendants still never returned his call.

134. Plaintiff was requesting the ability to participate in the phone interview portion of the interview for the position with Defendants by utilizing a telecommunications relay service, he communicated that he was deaf to Mr. Pistilli, and the interpreter on the line announced at the beginning of the call that Plaintiff was deaf and was attempting to use the telecommunications relay service. Defendants failed or refused to accommodate Plaintiff's request, failed to engage in the interactive process, and abruptly terminated the interview.

135. Plaintiff requested accommodation in the form of using a telecommunications relay service that would have allowed Plaintiff to be able to utilize American Sign Language ("ASL") for the telephone portion of the job interview. Defendants failed or refused to permit Plaintiff to utilize the requested accommodation, the Purple VRS service, abruptly terminated the interview, and then did not return Plaintiff's calls, denying Plaintiff employment.

136. Plaintiff could have excelled in the position, where he would have been able to lip read when communicating in person with other employees or customers, but Defendants never provided Plaintiff an opportunity to do so. The accommodation Plaintiff was requesting to utilize for the telephone portion of the job interview was the use of the Purple VRS service, which was necessary at that time because, on the phone, Plaintiff was not able to lip read.

137. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability in violation of § 955(a) of the PHRA. *See* 43 P.S. § 955(a). Defendants failed to reasonably accommodate Plaintiff's disability denying Plaintiff

employment on the basis of his disability in violation of § 955(a) of the PHRA. At all times relevant hereto, Defendants acted with intent to discriminate.

138. Defendants engaged in an unlawful discriminatory practice in violation of § 955(e) of the PHRA by aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct complained of herein. *See* 43 P.S. § 955(e).

139. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of the PHRA at § 955.

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

**COUNT VII:**
**RETALIATORY FAILURE-TO-HIRE/RETALIATION FOR REQUEST FOR REASONABLE ACCOMMODATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(d)**
**(Plaintiff, Eric Fritz v. Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc.)**

140. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

141. Defendants failed to hire Plaintiff in retaliation for his request for reasonable accommodation and on account of his need for an accommodation in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(d).

142. The PHRA, at 43 P.S. § 955(d), provides, in pertinent part, that it shall be an "unlawful discriminatory practice" "for any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act … ." 43 P.S. § 955(d).

143. Further, the prohibition on disability discrimination contained at 43 P.S. § 955(a) of the PHRA includes failing to make reasonable accommodations for an employee's disability and retaliating against an employee because of the employee's request for a reasonable accommodation for the employee's disability. *See* 16 Pa. Code § 44.14.

144. On or about July 7, 2024, Plaintiff applied for an open position with Defendants. The position was a Detail Manager position at Defendants' Lexus dealership located in Willow Grove, Pennsylvania.

145. Plaintiff submitted his résumé for the position to Defendants through Indeed.com. Based on a review of Plaintiff's resume, Defendants selected Plaintiff to be interviewed for the position. Plaintiff, therefore, alleges that he objectively met the minimum qualifications or requirements for the role he sought to hold with Defendants with or without reasonable accommodation.

146. On or about July 18, 2024, Plaintiff received a phone call from Mr. Joseph Pistilli, General Manager, an employee employed by Defendants, with respect to the position.

147. On the July 18th phone call, Plaintiff utilized a telecommunications relay service for the deaf. The telecommunications relay service utilized by Plaintiff for the July 18, 2024 phone

call between Plaintiff and Mr. Pistilli, General Manager of Defendants, was called, "Purple VRS." Purple VRS is an American Sign Language ("ASL") interpreting service for the deaf or hearing impaired. "VRS" stands for "Video Relay Service." The service operates by connecting the hearing-impaired client to a sign language interpreter, who then places a phone call for the client to the client's desired number. The sign language interpreter then uses the video feature on their phone much like a FaceTime or a video call to communicate what is being said to the client using ASL, and to verbally communicate to the recipient of the call what the client is saying. Plaintiff contends that when he places a phone call using Purple VRS, the sign language interpreter places the desired call and then begins the call, every time, much like a prompt or like a script, with the following: "Hello, a person using sign language is calling you through Purple VRS. I am Sign Language Interpreter Number [the interpreter provides their interpreter number here.]. Please hold while I connect you." The call then proceeds from there with the client speaking through the ASL interpreter. The service is called "Announce Relay."

148. On the telephone call, Mr. Joseph Pistilli, General Manager for Defendants, commented that Mr. Pistilli believed Plaintiff to be "fake," or words to that effect. Plaintiff was not "fake." Plaintiff was using a telecommunications relay service for the deaf.

149. When Plaintiff explained that he was deaf to Mr. Pistilli, Mr. Pistilli stated to Plaintiff that Mr. Pistilli was not interested, or words to that effect. Mr. Pistilli abruptly terminated the phone call.

150. Mr. Pistilli, General Manager, questioned whether Plaintiff was an "A.I. robot," writing in his interviewer notes on Indeed.com, following the interview, on July 18, 2024, "It seemed like I was talking to a robot. I do not think it was a person. AI?"

151. Defendants also stated to the EEOC in Defendants' Position Statement, dated October 10, 2024, that Mr. Pistilli believed Plaintiff was an "A.I. robot" during the phone interview for the position.

152. Mr. Pistilli prepared a notarized Affidavit that accompanied Defendants' Position Statement submitted to the EEOC. In the notarized Affidavit, Mr. Pistilli stated, "The voice on the phone sounded like a female robot. During the call I thought I was talking to an Artificial Intelligence (AI) robot and that the phone call was a scam." *See* Affidavit of Joseph Pistilli, dated August 27, 2024, at paragraph 9.

153. Plaintiff called Defendants' Willow Grove location back following the interview on July 18, 2024, no one answered, and his call was never returned.

154. Plaintiff also attempted to call Defendants back three additional times, on July 20, 2024, and Defendants still never returned his call.

155. Plaintiff identifies unusually suggestive temporal proximity, and timing plus inconsistent statements.

156. One inconsistent statement being alleged by Plaintiff was that Defendants' counsel subsequently communicated with Plaintiff's counsel about the matter, on August 8, 2024, when, at that time, Defendants' counsel sent a letter to Plaintiff's counsel stating, "[A]t no point did [Plaintiff] inform TGI [Defendant] that he was using a telecommunications service for the deaf or hard of hearing during his phone call with TGI nor did TGI have any knowledge in this regard." The aforementioned contention by Defendants is not credible and should be considered to constitute an inconsistent statement. During the phone call with Mr. Pistilli, General Manager, Plaintiff communicated that he was deaf after Mr. Pistilli referred to him as "fake," or words to that effect. In addition, the interpreter on the line clearly identified herself as an interpreter for the

deaf at the beginning of the phone call. The interpreter customarily does so at the beginning of every phone call. It is not credible that Mr. Pistilli did not know he was communicating using a third-party telecommunications relay service for the deaf. Mr. Pistilli knew he was communicating with a person who was deaf because Plaintiff communicated that fact to Mr. Pistilli directly and also the interpreter announced that fact at the beginning of the phone call.

157. Plaintiff identifies several additional inconsistent statements contained in Defendants' Position Statement submitted to the EEOC in this matter. Defendants subsequently submitted a Position Statement to the EEOC, on October 10, 2024, in which Defendants represented to the EEOC that they did not know Plaintiff had a disability, that Plaintiff did not notify Defendants of a disability, that Defendants did not know Plaintiff was attempting to use a telecommunications relay service for the deaf, and that Plaintiff did not communicate further with Defendants following the phone interview, all of which statements Plaintiff contends to be false. In fact, Plaintiff tried to call back after the initial phone interview once on July 18, 2024, and three additional times on July 20, 2024, but Defendants never returned Plaintiff's calls. Plaintiff alleges that the aforementioned statements should be considered to constitute inconsistent statements Defendants made to the EEOC in this matter.

158. Plaintiff identifies additional inconsistent statements made by Mr. Pistilli in his notarized Affidavit submitted to the EEOC. Mr. Pistilli stated, in his notarized Affidavit submitted to the EEOC, that Plaintiff never informed Mr. Pistilli that Plaintiff was deaf, that Mr. Pistilli was not informed that he was speaking with someone using a telecommunications relay service for the deaf, and that Plaintiff never communicated further with the company following the initial phone interview. Plaintiff contends that these statements are false and should also be considered to constitute inconsistent statements.

159. Defendants engaged in an unlawful discriminatory practice in violation of § 955(e) of the PHRA by aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct complained of herein. *See* 43 P.S. § 955(e).

160. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of the PHRA at § 955.

**WHEREFORE**, Plaintiff, Eric Fritz, demands judgment in his favor and against Defendants, Thompson Group, Inc., Thompson Lexus of Willow Grove, Thompson Lexus Willow Grove, The Thompson Group, The Thompson Group, Inc., The Thompson Organization, and The Thompson Organization, Inc., individually, and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions he would have received; past and future lost wages; compensatory damages for pain and suffering, mental anguish, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief including requiring that Defendants hire Plaintiff; and such other and further relief that this Court deems just, proper, and equitable.

## V. JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

DATED: 08/31/2026

Respectfully submitted,

Justin F. Robinette

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067

Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*Eric Fritz*

## VERIFICATION

I hereby declare under penalty of perjury that I am the Plaintiff in the within action and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 08/31/2026

By: Eric Fritz
Eric Fritz (Aug 31, 2026 13:44:53 EDT)
Eric Fritz

**CERTIFICATE OF SERVICE**

I, JUSTIN F. ROBINETTE, ESQUIRE, hereby certify that I caused to be served on the Defendants a true and correct copy of the foregoing document, Plaintiff's Complaint, via the method, and on the date set forth below, or as soon thereafter as service can be effectuated:

***VIA ELECTRONIC MAIL WITH NOTICE OF LAWSUIT AND REQUEST TO WAIVE SERVICE OF SUMMONS***

Shanna R. Fegely, Esquire
Hoffman & Hlavac
1605 North Cedar Crest Boulevard, Suite 517
Allentown, PA 18104
E-mail: sfegely@hhe-law.com

*Attorneys for Defendants*

DATED: 08/31/2026

Respectfully submitted,

Justin F. Robinette

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB # 2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*Eric Fritz*

# Fritz v. Thompson Group, Inc., et al. - Complaint

Final Audit Report 2026-08-31

| | |
|---|---|
| Created: | 2026-08-31 |
| By: | Justin Robinette (justin@Jrobinettelaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAYeIQicHLQLDDeFCXz8FPVyyGiK_iJjon |

## "Fritz v. Thompson Group, Inc., et al. - Complaint" History

Document created by Justin Robinette (justin@Jrobinettelaw.com)
2026-08-31 - 5:27:33 PM GMT- IP address: 68.80.255.94

Document emailed to Eric Fritz (eryanf84@gmail.com) for signature
2026-08-31 - 5:27:38 PM GMT

Email viewed by Eric Fritz (eryanf84@gmail.com)
2026-08-31 - 5:28:19 PM GMT- IP address: 66.102.8.77

Document e-signed by Eric Fritz (eryanf84@gmail.com)
Signature Date: 2026-08-31 - 5:44:53 PM GMT - Time Source: server- IP address: 73.233.54.148 - Signature Appearance Selected: MOBILE_TYPE

Agreement completed.
2026-08-31 - 5:44:53 PM GMT